UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE K. WILLIAMSON,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :     Case No. 3:19cv4(MPS) |
| DR. SYED NAQVI, ET AL.,<br>　　DEFENDANTS. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

The plaintiff, Clarence K. Williamson, is incarcerated at the Willard-Cybulski Correctional Institution in Enfield, Connecticut. Pending before the court is an amended complaint. For the reasons set forth below, the court will dismiss the amended complaint in part.

**I.     Procedural Background**

The University of Connecticut was the only defendant listed in the caption on the first page of the original complaint. Although four physicians were listed as parties on subsequent pages of the complaint, the court did not consider them to be defendants because they were not listed in the caption as required by Rule 10(a), Fed. R. Civ. P.

On April 17, 2019, the court dismissed the allegations against the University of Connecticut and permitted the plaintiff thirty days to file an amended complaint to the extent that he sought to assert claims against the four physicians who were not listed as defendants in the caption of the complaint. *See* Initial Review Order, ECF No. 11. The court informed the plaintiff that if he chose to file an amended complaint, it must include the dates on which each physician treated, spoke to or met with him regarding his knee injury; the name of the facility at which he met with, spoke to or received treatment from each physician; the nature of his requests for treatment; and a description of any treatment provided by each physician. *See id.* at 7.

On May 13, 2019, the plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983 against Drs. Syed Naqvi, Omprakash Pillai, O'Hallerin and Vicki Sara Blumberg. *See* Am. Compl., ECF No. 12. For the reasons set forth below, the amended complaint will be dismissed in part.

## II.  Legal Standard

The court reviews the amended complaint pursuant to 28 U.S.C. § 1915A(b) which requires a court to "dismiss . . . any portion of [a] complaint [filed by a prisoner that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard is applicable when an inmate is proceeding *in forma pauperis* as well as when an inmate has paid the filing fee. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint

must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## III. Facts

On August 1, 2012, the plaintiff was "in The Custody of the Connecticut Marshalls Department at New Haven Union Avenue Detention." *See* Am. Compl. at 7 ¶ 1. On August 1, 2012, two state marshals used handcuffs to hog-tie the plaintiff for over six hours. *See id.* During this incident, the plaintiff suffered an injury to his left knee. He experienced swelling and an inability to fully extend or bend his left knee or walk without limping. *See id.* The plaintiff submitted a complaint to the Connecticut Marshal's Service regarding the lack of treatment provided to him for the injuries caused by members of Connecticut's Marshal's Service. *See id.* ¶ 2. He received no response to his complaint. *See id.*

When the plaintiff arrived at Walker Correctional Institution ("Walker"), he submitted a request for medical treatment for symptoms including pain and swelling in his left knee. *See id.* ¶ 3. On October 25, 2012, Dr. Naqvi, a physician assigned to provide medical treatment to inmates at Walker, reviewed x-rays of the plaintiff's left knee, issued an order for a bottom bunk pass for the plaintiff, and prescribed Naproxen to treat the plaintiff's pain symptoms. *See id.*

At some point between July and August 2013, at MacDougall Correctional Institution ("MacDougall"), Dr. Pillai examined the plaintiff in response to his complaints of pain and an inability to fully extend his left knee. *See id.* ¶ 4. Dr. Pillai recommended no follow-up treatment for the plaintiff. *See id.*

At some point in 2014, Dr. O'Hallerin replaced Dr. Pillai as the physician assigned to provide medical treatment to inmates at MacDougall. *See id.* at 8 ¶ 5. The plaintiff sought

3

treatment from Dr. O'Hallerin because his knee was painful and swollen and he could not fully extend it. *See id.* Dr. O'Hallerin examined the plaintiff's left knee, noted the possibility of a tear of the anterior cruciate ligament or of the lateral collateral ligament in the knee, suggested that the plaintiff lose weight, issued the plaintiff a knee brace, and prescribed a medication that he explained would relieve the pressure on his left knee. *See id.* Dr. O'Hallerin also suggested that the plaintiff undergo an MRI of his left knee. *See id.* "No Follow-up or MRI was performed." *See id.*

On February 20, 2015, Dr. Pillai replaced Dr. O'Hallerin as the physician assigned to provide medical treatment to inmates at MacDougall. *See id.* ¶ 6. On that date, the plaintiff complained of left knee pain. *See id.* Dr. Pillai issued an order that the plaintiff undergo an MRI and x-ray of his left knee and verbally acknowledged that an MRI of the knee was medically necessary. *See id.* at 5-6 ¶ 13. The plaintiff then alleges that Dr. Pillai did not schedule or arrange for the plaintiff to undergo an MRI of his left knee and did not follow up with the plaintiff. *See id.*

At some point before January 20, 2016, prison officials at MacDougall transferred the plaintiff to Bridgeport Correctional Center ("Bridgeport CC"). *See id.* ¶ 7. On January 20, 2016, in response to the plaintiff's complaints of left knee pain, Dr. Blumberg submitted a request to the Utilization Review Committee ("URC") for approval of an MRI of the plaintiff's left knee. *See id.* The URC subsequently denied the request. *See id.*

Prison officials at Bridgeport CC transferred the plaintiff to Osborn Correctional Institution. *See id.* at 9 ¶ 8. The plaintiff filed a grievance regarding his knee pain and sought an MRI of his knee. *See id.* On March 3, 2017, the URC approved the request for an MRI. *See id.*

4

On March 21, 2017, the plaintiff underwent an MRI of his left knee. *See id.* The MRI reflected: "(1) [a] Chondral Defect measuring 2 x 9 mm at Posterior Medial Femoral Condyle[,] (2) Partial thickness Fissure[,] (3) Non-Displaced Chondral Flap[, and] (4) Joint Effusion Baker's cyst." *Id.* The plaintiff received "[n]o follow-up" after he became aware of the results of the MRI. *Id.*

## IV.  Discussion

The plaintiff does not indicate the basis for his claims against the defendants. The court liberally construes the allegations as a claim that the defendants were deliberately indifferent to the symptoms that stemmed from the injury he sustained to his left knee in August 2012. The plaintiff sues the defendants in their individual capacities for monetary damages.

### A.  Medical Claim against Dr. Naqvi

It is evident from Connecticut Superior Court records that at the time of the plaintiff's injury to his left knee in August 2012 and his confinement at Walker from October 2012 to May 2013, that the plaintiff was a pretrial detainee. These records reflect that on May 24, 2013, a judge sentenced the plaintiff to a term of imprisonment of nine years of imprisonment and ten years of special parole following his plea of guilty to one count of robbery in the first degree.[1]

Conditions of confinement claims of pretrial detainees "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell*

---

[1] Information regarding this conviction and sentence may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up, Criminal/Motor Vehicle, Convictions – by Docket Number using NNH-CR12-0130904-T.

5

*v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citations omitted). In *Darnell*, the Second Circuit clarified and re-defined the legal standard to be applied to a pretrial detainee's claims of deliberate indifference under the Fourteenth Amendment in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015).

There are two prongs to the standard governing a conditions of confinement claim asserted by a pretrial detainee under the Fourteenth Amendment. Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted).

The second or subject prong, also called "the *mens rea* prong, of [the] deliberate indifference [standard] is defined objectively." *Id.* at 35. Thus, "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.* To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Negligent actions alone do not rise to the level of intentional or reckless conduct and do not meet the second prong of the Fourteenth Amendment standard. *See id.* at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently."). The court applies the Fourteenth Amendment standard set forth in *Darnell* to the

plaintiff's claim that Dr. Naqvi was deliberately indifferent to his knee injury in October 2012. *See id.* at 35 ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to the conditions of confinement, or otherwise.").

The plaintiff has plausibly alleged that he suffered from a serious medical condition - chronic and severe pain in his knee and an inability to fully extend the knee – from August 2012 to March 2017. Thus, the plaintiff has asserted sufficient facts to meet the objective component of the Fourteenth Amendment standard when Dr. Naqvi treated him in October 2012. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (holding that allegations of "chronic pain the magnitude of which probably falls somewhere between 'annoying' and 'extreme'" were sufficient to demonstrate that inmate suffered from a serious medical need).

With regard to the *mens rea* prong of the Fourteenth Amendment standard, the plaintiff alleges that during his medical appointment on October 25, 2012, Dr. Naqvi reviewed x-rays of his left knee, issued him a bottom bunk pass and prescribed medication to treat his pain symptoms. Thus, Dr. Naqvi did not ignore the plaintiff's injury or symptoms or neglect to provide him with treatment. The plaintiff claims that Dr. Naqvi did not physically examine him during the appointment or recommend that follow up treatment was necessary. The plaintiff does not allege that he sought further medical treatment for his knee injury after his appointment with Dr. Naqvi or that Dr. Naqvi otherwise failed to respond to any further requests for treatment.

The fact that Dr. Naqvi did not recommend follow up treatment does not state a claim of indifference or reckless disregard to the plaintiff's complaints of pain and inability to extend his

7

knee. Furthermore, the plaintiff does not allege that he could not have requested to be seen by Dr. Naqvi or another medical provider in the future if the treatment recommended and prescribed by Dr. Naqvi on October 25, 2012 had not alleviated his symptoms. The allegations do not state a claim that Dr. Naqvi knew or should have known that an excessive risk to the plaintiff's knee existed when he determined that a physical examination and follow-up treatment was unnecessary during the appointment on October 25, 2012. Thus, the plaintiff has not met the *mens rea* prong of the Fourteenth Amendment medical needs standard. The Fourteenth Amendment claim regarding medical treatment provided by Dr. Naqvi is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Medical Claims against Drs. Pillai, O'Hallerin and Blumberg

At the time of his treatment by Dr. Pillai, Dr. O'Hallerin and Dr. Blumberg, the plaintiff had been sentenced. Thus, the court analyzes the claims against these defendants under the Eighth Amendment.

To state a claim for deliberate indifference to a serious medical need, two requirements must be met. Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock*, 315 F.3d at 162 (citations omitted). In determining whether a condition is serious, the court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second prong is subjective. Under this prong, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of serious harm

to the inmate. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Mere negligent conduct does constitute deliberate indifference. *See id.* at 280 (reckless indifference "entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

As indicated above, the plaintiff has alleged that he suffered chronic and severe pain in his knee and an inability to fully extend the knee – from August 2012 until March 2017. Thus, the plaintiff has asserted sufficient facts to meet the objective component of the Eighth Amendment standard with regard to the treatment provided by Drs. Pillai, O'Hallerin, and Blumberg from 2013 to 2016. *See Brock,* 315 F.3d at 163.

1. **Dr. O'Hallerin – Deliberate Indifference**

The plaintiff alleges that he saw Dr. O'Hallerin on one occasion in 2014 at MacDougall. During the appointment, Dr. O'Hallerin examined the plaintiff's knee and suggested the possibility that he had torn a ligament. Dr. O'Hallerin recommended weight loss, prescribed a medication to take the pressure of the plaintiff's left knee, issued the plaintiff a knee brace and suggested that the plaintiff undergo an MRI of his left knee. The plaintiff states that he did not undergo an MRI or see Dr. O'Hallerin for follow up treatment.

The plaintiff does not allege that Dr. O'Hallerin entered an order that he undergo an MRI of his knee. Rather, he alleges that Dr. O'Hallerin suggested it as a possible course of treatment. Nor does the plaintiff allege that the treatment prescribed by Dr. O'Hallerin was ineffective. There are no allegations that the plaintiff sought further treatment from Dr. O'Hallerin for knee pain, swelling or because he could not fully extend his knee or that Dr. O'Hallerin ignored any

9

complaints from the plaintiff about his knee. The allegations regarding the treatment provided by Dr. O'Hallerin on one occasion in 2014 in response to plaintiff's symptoms related to the injury to his knee do not demonstrate deliberate indifference to or reckless disregard for the plaintiff's serious medical need. The claim against Dr. O'Hallerin is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. **Dr. Blumberg – Deliberate Indifference**

The only allegation against Dr. Blumberg is that in January 2016, she submitted a request to the URC seeking approval for an MRI of the plaintiff's left knee. At some point, the URC denied the request. The plaintiff does not indicate the basis for the URC's denial of Dr. Blumberg's request that he undergo an MRI. The plaintiff alleges that Dr. Blumberg did not submit any further requests to the URC. As of March 3, 2017, the plaintiff was confined at Osborn. Later that month, he underwent an MRI of his left knee.

The plaintiff does not indicate that after the URC denied Dr. Blumberg's request for authorization to send him for an MRI of his left knee, he requested treatment from Dr. Blumberg either verbally or in writing or that he asked Dr. Blumberg to submit a new request for an MRI to the URC. Absent any indication of the basis for the denial of the initial request for an MRI and the lack of any allegations of complaints of knee pain or other symptoms made by the plaintiff after the denial of the initial request for an MRI, Dr. Blumberg's alleged failure to submit a second request for an MRI before officials transferred him to Osborn did not constitute deliberate indifference to a substantial risk of harm to the plaintiff's health. At most, Dr. Blumberg's conduct in neglecting to submit a second request for an MRI constituted negligence, which is not actionable under the Eighth Amendment. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.

10

2003) ("Deliberate indifference describes a mental state more blameworthy than negligence. . . .") (internal quotation marks and citation omitted). The claim against Dr. Blumberg is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. **Dr. Pillai – Deliberate Indifference**

Dr. Pillai examined the plaintiff's left knee on one occasion in July or August 2013 in response to the plaintiff's complaints of pain and an inability to fully extend the knee. The plaintiff does not allege that Dr. Pillai provided or recommended any treatment or prescribed any medication in response to his complaints of knee pain or difficulties with the full extension of his knee. Dr. Pillai did not recommend that the plaintiff receive any follow up treatment. There are no allegations that Dr. Pillai treated the plaintiff again prior to the date in 2014 when Dr. O'Hallerin replaced him as the treating physician at MacDougall.

In February 2015, Dr. Pillai saw the plaintiff and ordered that the plaintiff undergo x-rays and an MRI of his left knee. After the appointment, Dr. Pillai did not schedule or arrange for the plaintiff to undergo an MRI or facilitate the approval of an MRI for the plaintiff's left knee by submitting a request to the URC. To the extent that Dr. Pillai provided no treatment in response to the plaintiff's complaint of chronic knee pain in July/August 2013 and thought an MRI was medically necessary due to the plaintiff's symptoms of chronic knee pain in February 2015, but failed to facilitate or arrange for the MRI, the plaintiff has stated a plausible claim of deliberate indifference to medical needs. *See Price v. Reilly*, 697 F. Supp. 2d 344, 363 (E.D.N.Y. 2010) (inmate who lodged repeated complaints about his doctor's failure to schedule a prescribed x-ray exam constituted deliberate indifference to medical need); *Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (holding that failure to follow up on an MRI request could

11

constitute deliberate indifference under the Eighth Amendment). The Eighth Amendment deliberate indifference to medical needs claim will proceed against Dr. Pillai in his individual capacity.

## ORDERS

**The court enters the following orders:**

**(1)** The Fourteenth Amendment medical needs claim asserted in the amended complaint against Drs. Naqvi and the Eighth Amendment medical needs claims asserted against Drs. O'Hallerin and Blumberg are **DISMISSED**. *See* 28 U.S.C. § 1915A(b)(1). The Eighth Amendment deliberate indifference to medical needs claim **WILL PROCEED** against Dr. Pillai in his individual capacity.

**(2)** **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for Dr. Omprakash Pillai and mail a copy of the amended complaint, this order and a waiver of service of process request packet to Dr. Pillai in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request. If Dr. Pillai fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Dr. Pillai and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendant Pillai shall file his response to the amended complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall

admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

**(6)** **The Clerk shall** send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit**.**

SO ORDERED at Hartford, Connecticut this __27__ day of __June__, 2019.

/s/ MICHAEL P. SHEA_____
Michael P. Shea
United States District Judge