UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Clarence K. Williamson,
    Plaintiff,

v.

University of Connecticut,
    Respondent.

No. 3:19-cv-00004 (MPS)

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Clarence Williamson filed this lawsuit, *pro se*, when he was an inmate of the Connecticut Department of Corrections ("DOC"), claiming among other things that certain physicians within the DOC were deliberately indifferent to his medical needs in violation of the Eighth Amendment to the U.S. Constitution.[1]  After two initial reviews, I determined that only Williamson's Eighth Amendment claim against Defendant Dr. Omprakash Pillai would proceed, and I dismissed the remaining claims and the remaining defendants.  (ECF No. 13.)  Dr. Pillai has now moved for summary judgment as to the claims against him.  (ECF No. 25.)  Because I can find no evidence in the record that would allow a reasonable juror to find in Williamson's favor on the Eighth Amendment claim against Dr. Pillai, I grant the motion.

    **I.**    **FACTS**

The following facts are taken from Dr. Pillai's D. Conn. L. Civ. R. 56(a)1 statement and the evidence in the record.  Because Williamson did not file a D. Conn. L. Civ. R. 56(a)2 statement opposing Dr. Pillai's statement of facts or any evidence rebutting that statement, the

---

[1] According to DOC online records, Williamson is currently on special parole, Ct.gov, Connecticut State Department of Correction, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=244169 (last visited Nov. 3, 2020).  His current address on the docket reflects a New Haven, Connecticut residence.

facts in Dr. Pillai's statement that are supported by admissible evidence, which include all of the facts set forth below, are deemed admitted. D. Conn. L. Civ. R. 56(a)1.

An intake health screening of Williamson was performed by DOC medical staff on August 2, 2012. ECF No. 25-2 at ¶ 2. At the time, no knee injuries were noted. Dr. Pillai was not involved in this screening. ECF No. 26-5 (Pillai declaration stating that his first interaction with Williamson occurred on March 9, 2015).

On October 25, 2012, Williamson underwent knee x-rays ordered by Dr. Naqvi due to knee pain reportedly stemming from a motor vehicle accident. ECF No. 25-2 at ¶¶ 5-6; ECF No. 29 at 475. The x-ray findings were as follows: "Four views left knee performed and demonstrate no evidence of fracture or dislocation. No significant bony, joint space or soft tissue abnormalities are identified." *Id.* at ¶ 7. The "impression" portion of the report stated: "Normal examination. No fractures evident. No abnormality." *Id*. at ¶ 8.

Williamson continuously received medical treatment between 2012 and 2013, but there are no entries in his medical records by Dr. Pillai during those two years. *Id.* at ¶¶ 9-10. Dr. Pillai's first interaction with Williamson was a consultation on March 9, 2015. ECF No. 26-5 ¶ 7. The purpose of the consultation was to address Williamson's chronic lower back pain and concerns about left knee pain. ECF No. 25-2 at ¶ 13. Prior to the consultation, Dr. Pillai reviewed Williamson's medical records and saw the results of the x-rays conducted in October of 2012. ECF No. 25-2 at ¶ 12. During the consultation, Dr. Pillai conferred with Williamson about his medications and his weight, and noted that Mr. Williamson exhibited no deformity to his knee and had full range of motion. He also noted minimal tenderness over the medial joint line and that the ligaments/meniscus appeared intact. *Id.* ¶ 14. Dr. Pillai ordered x-rays of the left knee and prescribed Williamson Tylenol and Gabapentin for pain. *Id.* ¶ 15.

On March 11, 2015, the knee x-rays ordered by Dr. Pillai were performed. The x-ray findings were as follows: "Bones are intact. Joint spaces are preserved and anatomically aligned. There is no joint effusion. Overlying soft tissues are unremarkable." The impression stated as follows: "Normal left knee radiographs." *Id.* ¶¶ 17-19.

On April 10, 2015, Williamson transferred to Corrigan Correctional Center. The Transfer Reception Screening conducted by medical staff at Corrigan noted, "I/M [inmate] denies any acute medical issues." *Id.* ¶¶ 20-21. On June 4, 2015, Williamson returned to MacDougall Walker Correctional Institution. There were no immediate health needs noted. *Id.* ¶¶ 22-23. Dr. Pillai conducted a follow up consultation with Williamson on July 20, 2015, to review the x-rays of Williamson's left knee. Upon examination, Dr. Pillai found full range of motion and "no signs or abnormalities." *Id.* ¶¶ 24-25. Dr. Pillai gave Williamson a bottom bunk pass for six months, ordered Williamson a sleeve brace for his left knee, prescribed Tylenol for pain, and instructed Williamson on exercises for his knee. Based on the x-rays, Dr. Pillai did not believe additional treatment was warranted. ECF No. 26-5 at ¶ 26. The July 20, 2015 examination was the last interaction between Williamson and Dr. Pillai. *Id.* ¶ 27.

## II. LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654

F.3d 347, 358 (2d Cir. 2011). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America,* 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). On summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.,* 715 F.3d 417, 427 (2d Cir. 2013).

When one of the parties is self-represented, the Court must construe that party's submissions liberally, reading them to raise "the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). Here, however, Williamson has submitted nothing in opposition to Dr. Pillai's motion for summary judgment. In such a case, the court may grant the motion "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

### III.  DISCUSSION

In my initial review order, I allowed the deliberate-indifference-to-medical-needs claim to proceed against Dr. Pillai based on Williamson's allegations that (1) Dr. Pillai examined him in response to complaints of pain and an inability to extend his knee in July or August 2013 but did not provide or recommend any follow-up treatment, and (2) Dr. Pillai saw him in February 2015 and apparently thought an MRI was necessary but did not schedule one. Now, however, Dr. Pillai has submitted evidence – including his own declaration and Williamson's lengthy medical record – showing that he did not see or examine Williamson until March of 2015. Further, the evidence submitted by Dr. Pillai showed a normal knee examination, x-rays

indicating a normal knee, review of the x-rays by Dr. Pillai with Williamson at a follow-up appointment, and appropriately conservative treatment, given the findings of both the x-rays and the examination.

Under these circumstances, Williamson cannot rest on the allegations of his complaint – even though it is sworn. That is so because his allegations concerning Dr. Pillai appear to be based on his medical records – rather than Williamson's own personal knowledge – and the medical records do not support his allegations. For example, Plaintiff alleges as follows: "On February 20, 2015 one Dr. Pillai replaced R. O'Hallerin as the medical provider at MacDougall CI. On this date *according to medical file notes one Dr. Pillai* answering another requested complaint of left knee [sic] by [Williamson]. Dr. Pillai issued an order that a MRI be perform[ed] and another x-ray of the left knee and verbally acknowledged that a MRI of the left knee would be necessary. Dr. Pillai did not schedule or arrange MRI procedure and no follow-up was made." ECF No. 12 at 8 (emphasis added); *see also id.* at 5 ("In 2013 at MacDougall Correctional *one Dr. Pillai* examined Williamson's left knee in response to requested complaints of pain and inability to fully extend his left knee. Dr. Pillai recommended no follow-up …."). It is not surprising that Williamson would rely on his medical records to construct his claim, because his only allegations against Dr. Pillai describe events in 2013 and 2015 – 4 to 6 years before he filed this lawsuit.

The problem is that the medical records in the summary judgment record do not support Williamson's allegations. In Williamson's clinical record, there is no entry for February 20, 2015 – and no entry by Dr. Pillai at all – on a page showing treatment from December 2014 through February 2015. (ECF No. 29 at 450.) And, as noted above, there are no entries at all in Williamson's medical record by Dr. Pillai in 2013 – the time of the only other interaction

between them alleged in the complaint.  And while the medical records in this case are voluminous (see ECF No. 29), I have conducted electronic searches to attempt to find entries that might support Williamson's allegations; I have found none.  Further, as noted, Williamson has failed to respond to Dr. Pillai's motion for summary judgment and thus failed to point to any entries in the medical records that might support his somewhat conclusory allegations against Dr. Pillai.

Finally, the pertinent medical records I have been able to find – which are summarized in the factual narrative set forth above – belie Williamson's deliberate indifference claim.  "The Eighth Amendment medical deliberate indifference analysis is composed of both objective and subjective components."  *Green v. McLaughlin*, 480 Fed App'x. 44, 48 (2d Cir. 2012).  Under the objective prong, Williamson must show that his medical condition was "sufficiently serious."  *Gaffney v. Perelmuter*, 805 Fed App'x. 53, 55 (2d Cir. 2020).  "Factors informing this inquiry include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  *McClemore v. Bosco*, No. 9:14-CV-0626, 2018 WL 1193308 *23 (N.D.N.Y. Feb. 2, 2018) (internal quotation marks omitted).  "Under the subjective prong, mere negligence is not actionable, nor is mere medical malpractice tantamount to deliberate indifference.  Instead, deliberate indifference is equivalent to subjective recklessness, as the term is used in criminal law and requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Green*, 480 Fed. App'x. at 48 (internal quotation marks, citations, and alterations omitted).

The evidence in the record concerning Williamson's interactions with Dr. Pillai suggests that Williamson cannot meet either prong.  The x-rays of Williamson's knee showed no

fractures, no joint effusion, and "unremarkable" soft tissue. The examinations, including Dr. Pillai's examinations in 2015, were normal. Although Williamson may have been experiencing pain in his knee, it is at least questionable whether that condition alone was "sufficiently serious" to satisfy the objective prong of the Eighth Amendment claim. In any event, there is no evidence that would satisfy the subjective prong. The evidence concerning Dr. Pillai's treatment of Williamson's knee in 2015 shows that he ordered x-rays, reviewed the x-rays with Williamson, examined Williamson's knee, and, consistent with the normal x-ray results and a normal knee examination, prescribed conservative treatment, including Tylenol, a sleeve, a bottom bunk pass, and exercises, in response to Williamson's complaints of pain. There is no evidence of inappropriate treatment by Dr. Pillai, let alone deliberate indifference.

While it is true that a reasonable juror would be free to refuse to credit Dr. Pillai's declaration and his entries in the medical records concerning Williamson's treatment, there would still have to be some evidence in the record to support Williamson's claim to raise a genuine dispute of fact. All there is, however, consists of about five sentences in the complaint that describe the plaintiff's interactions with Dr. Pillai; as noted above, however, even those brief references appear to be based on either Williamson's misreading of his medical records – rather than his own recollection – or on other medical records that are not in the summary judgment record. So while I cannot say that there is *no* evidence supporting Williamson's claims – because his complaint is sworn –, I conclude that what evidence there is fails to raise a genuine dispute of fact – because no reasonable juror could rely on it to find in the plaintiff's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) ("In the circumstances presented in the instant case – where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the

District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe [the plaintiff's] testimony – we hold that the District Court did not err by awarding summary judgment." (internal quotation marks and citation omitted)).  I therefore grant Dr. Pillai's summary judgment motion.

### IV.  CONCLUSION

For the reasons set forth above, Dr. Pillai's motion for summary judgment (ECF No. 25) is GRANTED.  The motion to seal medical records, motion to file an unsigned declaration, and motion to substitute the record to file an unsigned declaration (ECF Nos. 23, 24, and 26) are also GRANTED.

IT IS SO ORDERED.

Dated: November 3, 2020
Hartford, Connecticut

/s/
Michael P. Shea, U.S.D.J.